# EXHIBIT A

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO** <br> 1437 Bannock Street, <br> Denver, CO 80202 | |
| **KWESI WEST and ALYSE WEST** <br><br> *Plaintiffs* <br><br> v. <br><br> **USAA GENERAL INDEMNITY COMPANY,** a Foreign Corporation. <br><br> *Defendant.* | DATE FILED <br> October 16, 2025 2:57 PM <br> FILING ID: 44236BA74756A <br> CASE NUMBER: 2025CV33725 <br><br><br><br><br><br><br><br><br> ▲COURT USE ONLY▲ |
| **Robinson & Henry, PC** <br> Jon M. Topolewski, #52318 <br> Matthew W. Hamblin, #49572 <br> 216 16TH Street, Suite 750 <br> Denver, CO 80202 <br> Phone Number: 303.688.0944 <br> Fax Number: 303.284.2942 <br> jon@robinsonandhenry.com <br> matthew.hamblin@robinsonandhenry.com <br> *Attorneys for Plaintiff* | Case No.: <br><br> Division: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiffs, Kwesi and Alyse West (hereinafter "Plaintiffs") by and through their attorneys, Robinson & Henry, P.C., for its complaint against Defendant, USAA General Indemnity Company (hereinafter "USAA") allege as follows:

## I.   PARTIES AND JURISDICTION

1. Plaintiffs are residents of the State of Colorado.

2. Defendant USAA is a foreign corporation that, at all times relevant to the allegations contained herein, does business in the State of Colorado.

3. USAA is licensed to conduct the business of insurance in Colorado, and at all relevant times hereto was conducting the business of insurance in Colorado.

4. USAA issued a property insurance policy, Policy Number 02791 82 67 92A, (the "Policy") to Plaintiffs for the residential property located at 15741 E. Progress Dr. Centennial, Colorado 80015-4257 (the "Property"). *See* **Exhibit 1** – Policy.

5. The Policy was entered into in Colorado, and the torts committed by USAA described in this Complaint and Jury Demand, occurred in Colorado.

6. This Court has personal jurisdiction over USAA under C.R.S. § 13-1-124(1)(a), (b), or (d).

7. This Court has subject matter jurisdiction over all claims asserted herein.

8. Venue is proper in this district under C.R.C.P. 98(c), which Plaintiffs designate as the place of trial.

## II.   GENERAL ALLEGATIONS

9. Plaintiff incorporates the paragraphs above as if fully set forth herein.

10. The Policy insured for "direct physical loss" to the Property. *See* **Exhibit 1** pg. 15.

11. The Policy provides insurance coverage for the Property on a replacement cost value basis.

12. The Policy purchased by the Plaintiffs covers "Windstorms or Hail." **Id.**

13. The Policy purchased by the Plaintiffs includes a provision for "Appraisal" which states:

    "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a **competent and impartial appraiser** within 20 days after receiving a written request from the other. [. . .] [**emphasis added**]

    **Id at 23.**

14. The Appraisal provision allows for appraisers and umpires to only "determine the "actual cash value", replacement cost, or cost to repair the property that is subject of the claim." **Id at 24.**

15. The Appraisal provision also states:

    "This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us."

    **Id.**

2

16. On May 10, 2023, during the Policy's effective period, a hailstorm caused damage to the Property.

17. The May 10, 2023, hailstorm caused damage to various parts of the Property insured by USAA. The loss consisted of damage to Plaintiff's roofs, gutters, siding, windows, doors and other exteriors to the Property.

18. The Plaintiff timely reported the loss to USAA, which USAA designated as Claim Number 027918267-013 (the "Claim".)

19. USAA inspected the loss to the Property on November 8, 2023, and completed its first estimate on November 10, 2023.

20. USAA's first estimate for Coverage A-Dwelling was a Replacement Cost Value ("RCV") of $19,469.69.

21. USAA's first estimate was a partial denial under the "wear/tear and mechanical breakdown" exclusion.

22. USAA's first estimate was insufficient because it did not include an appropriate scope of repair pursuant to the policy.

23. USAA's first estimate was insufficient because it did not include appropriate contractor pricing based on current market rates and conditions.

24. USAA's first estimate failed to account for a full replacement of the roof as the designation of portions of the roof as "wear and tear" or "mechanical damage" was unreasonable.

25. On December 14, 2023, Plaintiff's chosen contractor, iRoof & Restoration emailed USAA their estimate of repairs in the amount of $300,205.14 RCV.

26. iRoof & Reconstruction's December 14, 2023 estimate included the correct scope of repairs including the complete re-roof of the tile roof on the property.

27. On January 24, 2024, USAA responds to iRoof & Reconstruction stating that they would not change their coverage decision.

28. On March 15, 2024 iRoof & Reconstruction sent to USAA a report titled "Roof Tile Inspection Report" from JBA Consulting's Gary Manlove which specifically identified the roof tile as discontinued Boral Lifetile Slate profile.

29. JBA Consulting's report specifically noted that "used/salvaged tiles are not acceptable by Centennial Building Department" pursuant to Sections R904.3-4 & R908.1 of the building code.

3

30. JBA Consulting's report included Centennial Building Department code language and Residential Roof Repair/Reroof policies.

31. JBA Consulting's report specifically identified hail impact damages on the tile roof.

32. That same day, on March 15, 2024, USAA responded with the same correspondence sent on January 24, 2024 partially denying the claim and refusing to alter their estimate.

33. On April 18, 2024, Plaintiffs issued a signed appraisal demand letter naming Steve Ziegler as their appraiser.

34. In response, USAA named Jon Asp of Sedwick as their appraiser.

35. On October 17, 2024, Jon Asp and Steve Ziegler signed an appraisal award for $87,447.07.

36. Of the $87,447.07 appraisal award was $16,019.61 for roof repairs with salvaged or "bone yard" material despite Centennial Code requirements specifically stating that such tiles were "not acceptable."

37. On November 13, 2024, iRoof & Restoration was informed by Alex Miller of the Centennial Building Department that "Per our roofing guide, we do not allow harvested materials regardless of the size of the repair."

38. On or about December 10, 2024, iRoof & Restoration informed USAA and Plaintiffs that they could not obtain a permit from the Centennial Building Department as the repair methodology from the Appraisal Award violated applicable building codes.

39. On January 14, 2025, Steve Ziegler emailed the Centennial Building Department to confirm that a permit could not be obtained based on the Appraisal Award he signed.

40. On January 15, 2025, Chelsia Oborny responded to Mr. Ziegler's email and confirmed that no permit could be obtained and that "used materials are not acceptable" and "materials removed from one roof cannot be reused on any other roof."

41. Ms. Oborny's email included the same Residential Roof Repair/Reroof policy that was included in JBA Consulting's March 15th report.

42. On January 15, 2025, Mr. Zieglar emailed Mr. Asp in which he stated, "Jon, we've got a problem. Centennial is not allowing the roof to be repair/replaced partially as we wrote for it in the appraisal estimate/award. [. . .] If we can we please re-write and submit the remainder of the roofing under code coverage"

43. On January 17, 2025, Mr. Asp emailed Mr. Zieglar back and indicated that he had reached out to USAA to provide them the new information and indicated that they were reviewing it.

4

44. On February 7, 2025, Mr. Asp emailed Mr. Zigler stating, "USAA management has discussed this and they are not re-opening this claim. I've explained everything to them, nothing else I can do."

45. Shortly after Mr. Asp's email on February 7, 2025, Mr. Zigler responded, "This puts us in a very awkward spot. With this new information, is this something that you'd need approval from USAA to correct?"

46. In response at 9:49 AM, Mr. Asp stated, "They are willing to re-open the file with a signed award."

47. On February 10, 2025, Mr. Ziegler provided a revised appraisal estimate which incorporated the code requirements of the Centennial Building Department to Mr. Asp.

48. On February 17, 2025, Mr. Asp emailed Mr. Ziegler stating, "Steven, my management has been advised by their management not to re-open the file. They can reach out directly to the carrier."

49. Shortly after Mr. Asp's February 17, 2025 email, Mr. Ziegler responded the same day stating as follows:

> "I thought the carrier said they'd only consider re-opening with a new award which I provided or your consideration? We received new information that the award we issued does not allow for work to be completed according to the city code official. I encourage you to return to management (unsure why during the appraisal process this would be necessary as we're independent and impartial) as I anticipate there will be problems with the insured trying to complete work according to what was previously awarded when it's not allowed."

50. Following Mr. Ziegler's February 17, 2025 email, Mr. Asp did not respond prompting Mr. Ziegler to follow up on February 24, 2025.

51. On February 27, 2025, Mr. Asp sent a final email to Mr. Ziegler stating, "I've provided all the information to management and to the carrier. They have reviewed it and advised to keep my file closed and not have it re-opened to look into a new award.

52. That same day, Mr. Ziegler responded as follows:

> "I'm confused why an independent appraiser would be following the direction of management or of the carrier. Can you please elaborate what you mean by this? As we have discussed, there'll likely be significant consequences if we're unable to correct the mistake that was made on the previous award/estimate.

53. On March 12, 2025, Mr. Ziegler forwarded a text message from Mr. Asp recommending

5

that Plaintiffs reach out and discuss reopening appraisal with USAA.

54. In that same text message, Mr. Asp states, "if each party decides they want to have it reopened then fine. [. . . ]"

55. After Mr. Zeigler sent Plaintiffs Mr. Asp's recommendation to contact USAA, Plaintiffs reached out to USAA to reopen the claim and appraisal.

56. On April 23, 2025, USAA sent an email to Plaintiffs which stated as follows:

"Because we have an award signed by both representatives, the appraisal award is binding upon both you and us. In conclusion, we are not permitted to make any additional revisions to the agreed upon amount and all owed monies have been paid. Thank you."

57. USAA's April 23, 2025 email was incorrect and misrepresented the Appraisal provision which allows for the modification or expansion of the appraisal process or authority granted to appraisers by "written mutual consent" signed by Plaintiffs and USAA.

58. Given that the October 17, 2024 appraisal award's repair methodology violated Centennial Building Codes, the appraisal award did not reflect the Policy's Replacement Cost Value of the roof.

59. The October 17, 2024 appraisal award reflected a repair methodology that was impossible to perform because a permit was needed for construction and could not be obtained based on the obvious and apparent violations of Centennial Code requirements.

60. USAA has unreasonably delayed payment of covered benefits.

61. USAA has unreasonably denied payment of covered benefits.

62. USAA has unreasonably interpreted and incorrectly represented coverage afforded under the Policy.

63. USAA has failed to acknowledge and act reasonably promptly upon communications with respect to claims.

64. USAA has failed to act in good faith in its communications with Plaintiffs.

65. USAA has failed to adopt and implement reasonable standards for the prompt investigation of claims.

66. USAA has failed to reasonably and properly investigate the Claim.

67. USAA has refused to pay claims without conducting a reasonable investigation based upon all available information.

68. USAA has refused to issue revised estimates affirming or denying coverage within a reasonable time after approving coverage for repair of damage admittedly arising under the Policy.

69. USAA has attempted to resolve this claim for less than what it is reasonably obligated to pay pursuant to the Policy.

70. USAA has failed to act in good faith.

71. To date, Plaintiffs, and those acting on their behalf have complied with all requests for information made by USAA.

72. To date, Plaintiffs, and those acting on their behalf have complied with all conditions contained in the Policy.

### III.  FIRST CLAIM FOR RELIEF
(Declaratory Judgment Vacating Appraisal Award)

73. Plaintiffs incorporate all the foregoing allegations as though set forth fully herein.

74. The Policy's appraisal provision requires that each party select a "competent and impartial appraiser."

75. USAA's appraiser, Jon Asp, is incompetent, as evidenced by his creation of a repair estimate that violated Centennial Building Codes.

76. Jon Asp is incompetent because the repair estimate he created was incorporated into the Parties' appraisal award and could not qualify for a permit in Centennial.

77. Jon Asp is incompetent because the repair estimate he created violated the Policy as it did not reflect the Replacement Cost Value which seeks to "replace the property with property of like kind, quality, age and condition" or "to the condition it was just before the loss" because no work on the Property could be completed for want of a permit in compliance with Centennial Building Codes.

78. Plaintiffs' appraiser, Steve Zielger, is incompetent, as evidenced by his signed approval of a repair estimate that violated Centennial Building Codes.

79. Steve Ziegler is incompetent because the repair estimate he approved was incorporated into the Parties' appraisal award and could not qualify for a permit in Centennial.

80. Steve Ziegler is incompetent because the repair estimate he approved violated the Policy as it did not reflect the Replacement Cost Value which seeks to "replace the property with property of like kind, quality, age and condition" or "to the condition it was just

7

before the loss" because no work on the Property could be completed for want of a permit in compliance with Centennial Building Codes

81. Upon information and belief, both Mr. Asp and Mr. Zieger failed to consider the Centennial Building Codes that applied to repairs and reroofs to tile shingles in Centennial and in doing so failed to create an Appraisal Award that would determine Replacement Cost Value for the Property.

82. Both Mr. Asp and Mr. Ziegler breached the Policy's Appraisal provision by signing an award that objectively failed to determine Replacement Cost Value for the Property.

83. The Plaintiffs have a contractual right to competent appraisers in determining the amount of their loss.

84. The Plaintiffs have a contractual right to an appraisal that determines the "actual cash value", replacement cost, or cost to repair the property that is subject of the claim."

85. The Appraisal Award was a result of mistake on the part of Mr. Asp and Mr. Zeigler.

86. The Appraisal Award was signed by incompetent individuals, and the Appraisal Award must be vacated.

87. The Appraisal Award did not determine the "actual cash value", replacement cost, or cost to repair the property that is subject of the claim" and should be vacated.

88. Therefore, the Plaintiffs seek declaratory judgment that the appraisal award is invalid.

## IV.    SECOND CLAIM FOR RELIEF
(Breach of Contract)

89. Plaintiffs incorporate all the foregoing allegations as though set forth fully herein.

90. Sometime prior to the Incident, the Plaintiffs entered into a contract with USAA for the purpose of providing Insurance.

91. The Policy was in effect at all relevant times.

92. Pursuant to the Policy and Colorado law, USAA owed Plaintiff various duties under the Policy including but not limited to timely pay for the costs to repair and/or replace damage caused by a covered loss.

93. Plaintiffs are beneficiaries of USAA's Policy and are therefore entitled to enforce its terms.

8

94. USAA breached the duties owed to Plaintiffs by, among other things, failing to timely and appropriately compensate Plaintiffs for the full cost to repair the damage to the Property and replace personal property due to a covered loss.

95. As the beneficiary of the Policy, Plaintiffs are entitled to be compensated by USAA for the full cost to repair the damage caused by the covered loss.

## V.   SECOND CLAIM FOR RELIEF
(Violation of C.R.S. § 10-3-1115 & Relief Under C.R.S. § 10-3-1116)

96. Plaintiff re-alleges each and every allegation of this Complaint and Jury Demand as if fully set forth herein.

97. Sections 10-3-1115(1) and (2), C.R.S., forbid insurers such as USAA from unreasonably denying or delaying payment of a claim for benefits owed to or on behalf of a first-party claimant.

98. Plaintiffs are "first-party claimants" as that term is used under C.R.S. § 10-3-1115(1)(A)(I) and as is interpreted by the courts of the State of Colorado.

99. USAA's delay in issuing full payment as required under the Policy constitutes an unreasonable delay of payment.

100.   USAA's refusal to issue full payment as required under the Policy constitutes an unreasonable denial of payment.

101.   USAA denied payment of first-party benefits and did so without a reasonable basis within the meaning of C.R.S. § 10-3-1115.

102.   Section 10-3-1116(1), C.R.S., provides that a first-party claimant whose claim has been unreasonably denied or delayed by an insurer may bring an action to recover reasonable attorneys' fees and court costs and two times the covered benefit that was unreasonably delayed or denied.

103.   As described herein, USAA's actions violate C.R.S. § 10-3-1115.

104.   Plaintiffs therefore bring this claim to recover damages awardable under C.R.S. § 10-3-1116, separate from and in addition to those remedies and damages available under any other claims for relief.

9

## VI. FOURTH CLAIM FOR RELIEF

(Common Law Bad Faith)

105. Plaintiffs incorporate all prior allegations as though fully set forth herein.

106. USAA owed it's Insured a duty to act in good faith in reviewing, investigating, interpreting and adjusting the Claim as well as with communicating with Plaintiffs and Plaintiffs' representatives.

107. USAA breached their duties and acted in bad faith, through its conduct as described above and by engaging in the following, among other acts:

   a. Compelling Plaintiffs to institute litigation to recover benefits afforded under the Policy;
   b. Favoring the interests of USAA, an insurer, over those of Plaintiffs to whom USAA owes fiduciary and statutory duties;
   c. Failing or delaying payment of reasonable compensation for the damages and losses sustained;
   d. Failing to interpret the Policy and coverage consistent with the provisions thereof;
   e. Failing to adopt and implement reasonable standards for the prompt, proper, and adequate investigation of the Claim;
   f. Failing to reasonably investigate the Claim;
   g. Failing to effectively and appropriately communicate with Plaintiffs regarding its partial denial of coverage;
   h. Failing or refusing to respond to correspondence and communications from the Plaintiffs and/or their representatives or offering incomplete responses;
   i. Basing coverage decisions on unreliable and inaccurate resources that fail to appropriately reflect current usual and customary costs of goods and labor;
   j. Failing to consider the full amount of damages and losses incurred; trickling out additional claim dollars over many months instead of resolving scope of repair/replacement issues immediately and making a complete, if not substantially complete, claims payment;
   k. Issuing a coverage decision and denial of benefits without a reasonable basis;
   l. Making a coverage decision that would result in the creation of a construction defect that was not previously present;
   m. Incompetently handling Plaintiffs' claim.
   n. Refusing to reopen appraisal when it knew or should have known that the appraisal award was the product of mistake and/or lack of competency.
   o. Otherwise, engaging in conduct prohibited by C.R.S. §§ 10-1-101 and 10-3-1104(1)(h).

108. USAA's actions were unreasonable.

109. USAA knew its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable.

110. As a direct result of USAA's breaches of its duties to Plaintiff, Plaintiff has been damaged including, but not necessarily limited to:

    p. Being forced to incur additional costs in litigation;
    q. Experiencing personal and professional financial hardships;
    r. Enduring the mental distress and emotional trauma of being unnecessarily involved in a lawsuit with USAA

WHEREFORE, Plaintiff's respectfully requests that this Court enter judgment against USAA and in its favor for actual damages in an amount to be determined at the time of trial, pre-judgment interest from the date of the accident, post-judgment interest, costs, expert witness fees, and other relief this Court deems just and proper.

PLAINTIFF REQUESTS A JURY OF SIX.

Respectfully, submitted on this 16th day of October, 2025.

**ROBINSON & HENRY, P.C.**

By: /s/ Matthew W. Hamblin
Matthew W. Hamblin, #49572
*Attorney for Plaintiffs*

**Plaintiff's Address:**
15741 E. Progress Dr
Centennial, CO 80015-4257